### LEWIS v WASHINGTON (city)

Ohio Appeals, 2nd Dist, Fayette Co

No 236.   Decided May 6, 1938

Maddox & Maddox, Van Wert, for plaintiff-appellant.

W. S. Paxson, City Solicitor, Van Wert, for defendant-appellee.

## OPINION

### By THE COURT

The plaintiff below brought this action against the City of Washington, alleging that he is the owner and operator of a retail grocery and meat store and for several years past has advertised his business and the merchandise he offers for sale to the public by the newspapers and by distributing small hand-bills each week from house to house in said city; that in the lawful pursuit of his business he has caused the hand-bills to be neatly folded and once each week has distributed one at the doors of the several dwelling houses of the city; that the City of Washington passed an ordinance (which will be noted later), and that by reason thereof he will not be permitted to advertise his business by passing hand-bills from house to house; that the purpose of the ordinance is to compel plaintiff and others to limit advertising to newspapers, or by distributing hand-bills to such persons as he may see personally; that the ordinance is unreasonably discriminatory and oppressive and that since its effective date plaintiff has been hinder-

ed in the operation of his business and has suffered loss; that the ordinance denies his right to appeal to the public for patronage and an opportunity to advertise his wares to those of the citizens who are non-subscribers of the local paper; that enforcement results in an infringement of his property rights and that the ordinance is violative of the Federal and State Constitution and of the statutes of Ohio; that unless restrained the city, through its officers, will cause him and those distributing hand-bills to be prosecuted, by reason of which the plaintiff will sustain irreparable loss.

Plaintiff prays that the city may be restrained from enforcing the ordinance and that the same may be declared null and void.

### THE ORDINANCE

The questioned provisions of the ordinance are:

"Section I. That the passing of handbills and other advertising matter of any kind from house to house in the City of Washington is an injury, a fire hazard and an annoyance to the public, and the same is hereby declared to be a public nuisance.

"Section II. That for the protection of the public health, peace, safety, and morals it shall be unlawful for any person, firm or corporation to pass handbills or to distribute from house to house in any manner whatever any advertising matter."

The city answered, admitting the passing of the ordinance and that it intended to enforce the same. The matter was heard by the court below on testimony of witnesses and the court held that the ordinance was valid and dismissed plaintiff's petition, from which error is prosecuted to this court on questions of law and fact. The parties agree that the evidence below should be the evidence considered in this court.

We briefly summarize the evidence in which the plaintiff testified in support of the allegation of his petition, in that he had for several years been accustomed to advertising his business through newspapers and in addition thereto by small handbills, which were delivered once a week to all the houses in the city. Before delivery they were neatly folded and the boys were instructed to place them inside the screen door where there was one or if none, in front

of the door; that none were distributed upon the streets and the by-ways of the city; he also testified that the weekly distribution amounted to approximately 2000; that after the passage of the ordinance he suffered a loss of business, it dropping off about one-half, and that many people came to him complaining that they had not received the advertising matter. Another merchant testified that he distributed about 2000 of such circulars a week and that there were other merchants who advertised in the same way.

Evidence was produced on behalf of the city to the effect that those caring for the streets frequently found this advertising matter on the streets and in the catch basins and that since the passage of the ordinance the number so found had greatly lessened.

### THE QUESTION

The question is whether or not this ordinance is a valid enactment of the city of Washington and within the powers conferred upon municipalities under the Constitution and general laws.

**Section 3 of Article XVIII** provides:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations as are not in conflict with general laws."

It may be noted that the ordinance contains a declaration that the passing of hand-bills is an injury, a fire hazard and an annoyance to the public and that for the protection of the public health, peace, safety and morals it shall be unlawful to pass such bills. Evidence was given by the plaintiff to the effect that the passing of the bills was not within any of these enumerated objectionable classifications.

We are not concerned with any declaration within the ordinance itself of the purpose of its passage. The question is whether it is within the powers of the municipality or whether it conflicts with any general law.

It is claimed by counsel for appellee that §3674 GC, which seeks to regulate and license bill posters is a law with which the ordinance conflicts. This section has been held unconstitutional by a lower court but is still an effective statute.

We have no difficulty in arriving at a conclusion that the ordinance is not in conflict with this statute. The statute seeks to control and license bill posters and has no reference to the subject treated in the ordinance. It is directed to the control of the occupation of the bill poster, while the ordinance seeks to prevent the distribution of hand-bills from house to house, no matter by whom. If the bill poster were licensed he might still be forbidden to pass bills from house to house and the ordinance may be effective even though there be no licensed bill posters distributing the bills.

It is urged by appellant that his business of merchandising is a property right and that he has a vested interest and that he has such property rights in the advertising of such business as may not be interfered with without violation of the Constitution. He alleges that the purpose of the ordinance is to compel him to resort to newspaper advertising.

We do not believe the right to do business carries with it a property right to advertise such business in a way that may be a nuisance. The ordinance is addressed to the protection of a citizen whose property is invaded by those passing the bills. He has no right to advertise his legitimate business that is superior to the right of the citizen to be free from a weekly distribution of his advertising matter. While it may be true that some of his customers have complained that they did not receive their weekly information about the wares he had for sale and other information furnished by the bills, yet there are many other citizens who may feel relieved because their premises are not used for the deposit of undesired advertisements.

Sec 12492 GC provides that whoever posts advertisements on private property without the consent of the owner shall be punished. That is a law which protects the property of the individual from being disfigured by advertising matter affixed to it without the owner's consent and is not different in principle from the effect of the ordinance in protecting the property of the citizen from the distribution of hand-bills.

It is also complained that the ordinance is discriminatory because it does not include within its terms the distribution of certain free copies of newspapers. It is not subject to this condemnation because it

does not include other matters of somewhat similar nature.

Classification of offenses to be covered is within the power of the legislative body; such classification must not be arbitrary or artificial or evasive. There must be a substantial distinction in the nature of the classifications upon which the law operates and the legislative body has wide discretion as to such classification and an ordinance will not be held invalid unless discriminating against members of the same class so as to deny an equal protection of the law. Those sought to be protected by the ordinance are the property owners and there is no arbitrary classification in the failure to bring newspapers within the same category as hand-bills.

It is claimed that the ordinance does not fall within the provisions of the Constitution giving the power to municipalities to enforce "within their limits such local police, sanitary and other similar regulations * * *". This invites our attention to principles which have been long established and which have been more recently enunciated in connection with the powers of municipalities under ordinances. We direct the attention of counsel to the outstanding case of **City of Xenia v Schmidt, 101 Oh St 437,** which involves so many principles that it is scarcely possible to enumerate them without a careful reading of the whole case, but we may glean the following: A legislative act is presumed in law to be within the constitutional power of the body making it, whether that body be a municipal or a state legislative body, and that presumption of validity cannot be overcome unless it appears that there is a clear conflict between the legislation in question and some particular provision or provisions of the Constitution. The guarantee of "equal protection of the laws" is fully complied with when the law operates equally upon each member of a designated class and the legislative body may direct its legislation against any evil as it actually exists, without covering the whole field of possible abuses. The validity of the law ought not to be questioned unless it is so obviously repugnant to the Constitution that all men may perceive the repugnancy. Every possible presumption is in favor of the validity of a statute and this continues until the contrary is shown beyond a rational doubt. It is only when manifest assumption of authority and clear incompatibility between the Constitution and the law appear that the judicial power can refuse to execute it; such interference can never be permitted in a doubtful case These rules apply to ordinances as well as to laws. In that case it was held that an ordinance seeking to deprive merchants of the right to display their wares upon the sidewalks was not violative of any provision of the Constitution or of any general law.

In the case of **City of Dayton v Kresge, 114 Oh St 624,** it is held that:

"The determination of the question whether or not building regulations prescribed by an ordinance are reasonably necessary for the safety of the public is committed in the first instance to the judgment and discretion of the legislative body of the municipality and unless it is clear that such regulations are unreasonable and arbitrary or have no real or substantial relation to the public health, safety, morals or general welfare, the courts will not hold the same invalid."

In the case of **Wondrak v Kelley et, 129 Oh St 268,** the contrary principle is upheld. It is there held:

"If it is clear that police regulations adopted by municipal councils are arbitrary or unreasonable and have no substantial relation to the public health, morals, safety or public welfare, it becomes the duty of the court to declare such regulations to be invalid."

See **Greenburg v Cleveland, 93 Oh St 282; Wilson v Zanesville, 130 Oh St 286; City of Youngstown v Evans, 121 Oh St 343; Struthers v Sokol, 108 Oh St 263; Village of Perrysburg v Ridgway, 108 Oh St 245.**

Under these principles it is our duty to determine whether or not the ordinance in question falls within the provisions of **§3 of Article XVIII,** which grants the authority to municipalities to "exercise all powers of local self-government" and "to adopt and enforce such local police, sanitary and other regulations as are not in conflict with the general laws," or whether the ordinance is so arbitrary and unreasonable and so unrelated to the public health,

morals, safety or public welfare as to render it void.

We have already held that it is not in conflict with any general law. It then becomes our duty to determine whether it is clear that it is discriminatory, arbitrary and unreasonable and has no substantial relation to the public health, morals, safety or public welfare.

We feel that the provisions of the Constitution "that municipalities shall have authority to exercise all powers of local self-government" has not received the consideration to which it is entitled. Let us again visualize the evil sought to be corrected. The city council of the beautiful little city, for reasons best known to itself, has prohibited the passage of hand-bills at frequent intervals to practically every household in the municipality, declaring that such distribution is a nuisance. Considering the evil to be corrected and the means taken therefor and the beneficial results flowing from the passage of the ordinance and also considering the inherent right of the municipality within prescribed limits to determine what is for the public welfare of the inhabitants of the city and the frequent declaration of the courts that the prerogative of the legislative body will not be interfered with unless it clearly appears that it has exceeded its inherent power, we have arrived at the conclusion that this ordinance is valid and well within the rights of the municipal authorities to pass and enforce and that it is not discriminatory and does not deprive the appellant of any of his property rights and does not violate any of the protective provisions of the Constitution or the general laws of the state.

We have been much impressed with the logic of the trial court as appears in his decision and fully concur with his conclusion.

We have carefully read the case of **In Re Wilbur Thornburg, 7 O. Op. 83** and **Cleveland Shopping News v Lorain, 13 Abs 265.** We can perceive much in these cases that standing alone might support the position of the appellant but we do not believe they are inconsistent with our judgment and if they are irreconcilably so, then we must disagree with their conclusion.

In the case of Alma Lovell v City of Griffin, decided by the Supreme Court of the United States March 28, 1938, (United States Law Week of March 29, 1938, page 11) it is held:

"A city ordinance prohibiting the distribution in the city of 'circulars, handbooks, advertising, or literature of any kind' without a permit from the city manager is unconstitutional on its face in that it impairs freedom of the press in violation of the due process clause of the Fourteenth Amendment."

We have given careful attention to this case but are of the opinion that it is not controlling, inasmuch as it relates to the constitutional provision guaranteeing "freedom of the press" and not to specific regulations, such as are involved in this case. The court says of the ordinance:

"The ordinance is comprehensive with respect to the method of distribution. It covers every source of circulation 'either by hand or otherwise'. There is thus no restriction in its application with respect to time or place. It is not limited to ways which might be regarded as inconsistent with the maintenance of public order, or as involving disorderly conduct, the molestation of the inhabitants or the misuse or littering of the streets. The ordinance prohibits the distribution of literature of any kind at any time, and any place, and in any manner without a permit from the city manager."

"We think that the ordinance is invalid on its face. Whatever the motive which induced its adoption, its character is such that it strikes at the very foundation of the freedom of the press by subjecting it to license and censorship."

Judgment affirmed.

BARNES, PJ, HORNBECK and GEIGER, JJ, concur.